RECEIVED
NOV 2 3 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **PEGGY HEBERT** | **CIVIL ACTION NO. 04-1863** |
| **VS.** | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

### REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's unfavorable disability finding. Considering the administrative record, the briefs of the parties and the applicable law, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

*Background*

Born on February 10, 1946, Peggy Hebert ("Hebert") is a 59-year-old claimant with a fifth-grade education.[1] (Tr. 211). Hebert has worked in the past as a housekeeper and cashier. (Tr. 14).

On March 5, 2002, Hebert protectively filed an application for supplemental security income benefits, alleging disability as of June 1, 1998 due to back, arm, hand, and leg pain. Her application was denied initially and on reconsideration. An administrative hearing was held on January 27, 2004.[2] In an opinion dated March 18, 2004, the ALJ found that Hebert retains the ability to perform her past work as a cashier. (Tr. 19). The Appeals Council denied review,

---

[1] Although Hebert testified that she has a fifth-grade education (Tr. 211), the ALJ states that she has a sixth-grade education. (Tr. 14).

[2] Although Hebert states in her brief that she was unrepresented at her hearing, the hearing transcript indicates that she was represented by attorney Lorna Sennet. (Tr. 206).

making the ALJ's decision the final decision of the Commissioner from which Hebert now appeals.

### *Assignment of Errors*

Hebert raises three errors on appeal: (1) The ALJ erred in assessing Hebert's residual functional capacity ("RFC"); (2) the ALJ erred in classifying Hebert's past work as a "cashier" rather than a "cashier/stocker;" and (3) the ALJ failed to fully and fairly develop the record.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

## *Analysis*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

In the instant case, the ALJ determined at Step 4 that Hebert suffers from the severe impairments of a back disorder, osteoarthritis, obesity, asthma, chronic obstructive pulmonary disease, and shortness of breath, but that she is not disabled because she retains the residual functional capacity to perform a limited range of light work. The ALJ concluded that this RFC would allow Hebert to return to her past work as a cashier, which is categorized as a "light" duty job. (Tr. 20).

After careful consideration of the record, the undersigned concludes that the ALJ's decision is supported by substantial evidence.

1. **Medical Evidence**

4

The record shows that Hebert began complaining of headaches, dizziness, chronic obstructive pulmonary disease, chronic bronchitis, and asthma in October 2001. (Tr. 119). A computer topography scan of Hebert's head dated July 10, 2001 was normal. (Tr. 120). Hebert, who admitted that she smoked one pack of cigarettes per day, was told to quit smoking, as it exacerbates her condition. (Tr. 199). On November 27, 2001, an ultrasound of Hebert's cervical spine showed degenerative disc disease at C3-C7 with no other abnormalities. (Tr. 113). An ultrasound of Hebert's left shoulder taken on the same date was normal. (Tr. 114).

In April 2002, Hebert went to the emergency room at University Medical Center, where an x-ray of her left knee was normal. Hebert was diagnosed with gastroesophageal reflux disease, tobacco abuse, bronchitis, and arthralgia. (Tr. 109-10). Hebert was again advised to quit smoking. (Tr. 109).

A consultative examination was performed by Dr. Michael J. Leddy, III, an orthopedic surgeon, on May 4, 2002. Hebert complained of "global body pain." (Tr. 132). A spine exam showed painless range of motion with no pain on palpation throughout the cervical spine and a grossly negative straight leg raise in the sitting as well as supine position. (Tr. 133). Although Hebert reported that she is unable to lay on her back for a significant duration of time, Dr. Leddy reported that she could "sit straight up from the sitting [sic] position without rolling to her side." (Tr. 133). Hebert also was able to do heel raises as well as toe raises and walk heel-to-toe with no problems. Dr. Leddy also noted positive Waddell signs with regard to twisting as well as axial loading.[3] Fine and gross manipulation skills were well within normal limits and upper

---

[3] Waddell signs are "manifestations of pain resulting from specific maneuvers that should not induce back pain, and are used to identify patients reacting to 'psychosocial' factors, such as economics or social issues, including pending litigation." See Hilmes v. Barnhart, 118 Fed.Appx. 56, 58, 2004 WL 1899913, *2 (7th Cir. 2004),

extremities had full range of motion, although Hebert reported that all movements caused pain. Dr. Leddy reported that although Hebert complained of shoulder pain, her shoulder range of motion was within normal limits. All lower extremities were within normal limits, and Hebert showed no signs of spasm or other neurologic deficits. Dr. Leddy further reported that Hebert's only significant joint abnormalities were some pain on palpation to the MCPs, DIPs, as PIPs (finger joints) of her hands.[4] Grip strength, dexterity, and grasping ability were all within normal limits. (Tr. 134). Finally, Dr. Leddy noted that Hebert had a "very grandiose effect." (Id.).

Hebert visited UMC in June 2002 and reported right shoulder pain, left heel pain, and left leg numbness and tingling. (Tr. 155). Hebert was again instructed to stop smoking for her bronchitis and was given non-steroid anti-inflammatories for tendinitis. (Id.).

Hebert underwent a second consultative examination by Dr. John Canterbury, a doctor of internal medicine, on April 26, 2003. Dr. Canterbury reported that Hebert had no trouble walking and could get on and off the table and up and out of chairs with no problems. (Tr. 159). He further noted that Hebert had no atrophy, edema, and that her grip strength and range of motion in all joints were normal. (Tr. 159-60). Straight leg raising tests were normal. (Tr. 160). Dr. Canterbury reported that Hebert can walk, sit, stand, and lift objects up to 10 lbs., with limitations due primarily to pain in her right knee and elbows as well as shortness of breath. (Tr.

---

citing Robert L. Bratton, M.D., *Assessment and Management of Acute Low Back Pain*, 60 AMERICAN FAMILY PHYSICIAN 2299-308 (November 15, 1999) *available at* www.aafp.org/afp/991115ap/2299.html; *Signs Suggestive of Nonorganic Back Pain, available at* www.neuroland.com/spine/lbp_nonorganic_sign.htm.

[4] The following summary of the anatomy of the hand, taken from www.handuniversity.com, is helpful:

The finger joints work like hinges when the fingers bend and straighten. The main knuckle joint is the *metacarpophalangeal joint* (MCP). It is formed by the connection of the metacarpal bone in the palm of the hand with the first finger bone, or *proximal phalanx*. Each finger has three phalanges, or small bones, separated by two interphalangeal (IP) joints. The one closest to the MCP (knuckle) is called the PIP, or *proximal IP joint*. The joint near the end of the finger is called the DIP, or *distal IP joint*.

161). Dr. Canterbury noted that the best thing that Hebert could do to improve her shortness of breath was to quit smoking. (Id.).

The record also contains an undated piece of paper from Dr. J. Charles Dugal, a general practice doctor, stating that Hebert is "totally and permanently disabled." (Tr. 171). The document is not accompanied by any treatment notes or other medical reports from Dr. Dugal.

## 2.     **Residual Functional Capacity**

Hebert contends that the ALJ improperly assessed her residual functional capacity. The ALJ concluded that Hebert can lift and carry 20 lbs. occasionally and 10 lbs. frequently; stand or walk for 6 hours in an 8-hour workday; and should avoid fumes, chemicals, and smoke. The ALJ therefore found that Hebert retains the ability to perform her past work as a cashier, which is defined as "light work." (Tr. 19). In so concluding, the ALJ discounted the opinion of Dr. Dugal, who noted that Hebert is "totally and permanently disabled," on grounds that Dr. Dugal's statement was undated and not supported by treatment notes or other objective evidence, and gave little weight to Dr. Canterbury's opinion that Hebert can lift only 10 lbs., finding that this conclusion was inconsistent with the other medical evidence in the record. (Tr. 19). The ALJ also noted that Hebert had been instructed for years by various doctors to stop smoking but had failed to do so, thus ignoring treatment that would have ameliorated her bronchitis.

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). After review of the evidence in the instant case, the undersigned concludes that the ALJ's conclusion is supported by substantial evidence. Dr. Leddy reported that Hebert's spine exam showed painless range of motion with no pain on palpation throughout the cervical spine and a grossly negative

straight leg raise test; normal fine and gross manipulation skills; normal range of motion in the upper and lower extremities, as well as the shoulders, with no signs of spasm or any other neurologic deficits; and normal grip strength, dexterity, and grasping ability. (Tr. 133-34). Dr. Canterbury reported that Hebert had no trouble walking and could get on and off the table and up and out of chairs with no problems. (Tr. 159). He further noted that Hebert has no atrophy or edema, and that her grip strength, range of motion in all joints, and straight leg raising tests were all normal. (Tr. 159-60).

The undersigned also agrees with the ALJ that Dr. Canterbury's finding that Hebert cannot lift more than 10 lbs. is not supported by substantial evidence, given the medical evidence showing that Hebert's spine exam showed painless range of motion with no pain on palpation throughout the cervical spine, normal range of motion in the upper and lower extremities, and no neurological defects. In short, the record shows that Hebert's physical examinations have yielded largely normal results, and no examining physician has opined that Hebert cannot work.

Furthermore, the ALJ was correct in finding that Hebert's refusal stop smoking adversely impacts her claim for benefits. The Regulations state that, "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work..." 20 C.F.R. §416.930. Furthermore, 20 C.F.R. §404.1530(b) states that "[i]f you do not follow the prescribed treatment *without a good reason*, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." 20 C.F.R. §404.1530(b) (emphasis added). The Fifth Circuit has upheld these principles, stating that conditions remediable by medication, surgery, or other treatment are not disabling. Warren v. Sec. of HHS, 1994 WL 842953, 3 (W.D.La. 1994), citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir.1988) ("If an impairment

reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Courts have held that "good reasons" for failing to follow a treatment regime include lack of sufficient financial resources and side effects of the medication. See, e.g., Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).

In the instant case, Hebert fails to cite a good reason for refusing to stop smoking. Therefore, her failure to follow this medication regime, in part, precludes her from being entitled to benefits.

3. **Classification of Hebert's Past Work as a "Cashier" Rather Than a "Cashier/Stocker"**

Hebert contends that the ALJ erred in finding that she can return to her past work as a cashier, and further, that the ALJ erred in classifying her past work as "cashier" instead of "cashier/stocker." Hebert argues that her past work as a cashier required her to work the cash register, fill soda coolers, and stock groceries, which required her to stoop, bend, and squat. (Tr. 76). Hebert argues that she cannot do such activities given her current impairments.

It is well-settled that in determining whether a claimant can perform past relevant work, the ALJ may consider the functional demands of the job either as generally performed in the national economy or as actually performed by the claimant. Social Security Ruling (SSR) 82-61.[5] See also Leggett v. Chater, 67 F.3d 558, 564-65 (5th Cir. 1995). In Leggett, the court stated:

> The mere inability of a claimant to perform certain "requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is

---

[5] Social Security Rulings are issued by the Social Security Administration and are based on case decisions made at the administrative levels of adjudication, federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, and other policy interpretations of the law and regulations. Although Social Security Rulings do not have the force and effect of the law or regulations, they are binding on all components of the Social Security Administration, in accordance with Section 422.406(b)(1) of the Social Security Regulations No. 22 (20 CFR Part 422), and are to be relied upon as precedents in adjudicating other cases.

used in the regulations"; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy. The record contains sufficient evidence to support the Commissioner's finding that Leggett is capable of performing his past relevant work as a cashier as that position is generally performed in the national economy.

There is no evidence in the record supporting a conclusion that Hebert cannot stoop, bend, or squat. Furthermore, Hebert stated in her vocational report that her past work involved lifting no more than 20 lbs., walking and standing for four hours per day, and sitting for thirty minutes. (Tr. 76). Review of the record shows that these requirements of Hebert's past work as a cashier are consistent with her current residual functional capacity. Thus, not only does the evidence support a conclusion that Hebert can return to her past work *as she actually performed it*, the undersigned concludes that the evidence also shows that Hebert can return to her past work *as that position is generally performed in the national economy.*

Considering the foregoing, the undersigned concludes that the ALJ did not err in concluding that Hebert can return to her past work, and this claim is without merit.

3.  **ALJ's Failure to Fully Develop the Record**

Finally, Hebert contends that the ALJ failed to develop the record with respect to her intellectual deficiencies. Specifically, she alleges that her responses to the following questions at her administrative hearing should have raised a "suspicion" that she is intellectually impaired, and that the ALJ should have ordered a further intellectual evaluation:

Examination of Claimant by Attorney:
Q: Where did you go to school?
A: Central [INAUDIBLE].
Q: What grade did you complete?
A: You could say, the fifth.
Q: Can you read.
A: A little bit.
Q: What do you mean, a little bit? Can you read a newspaper?

A:     I don't read the newspaper, no.
Q:     Can you?
A:     Some words, yeah, but basically, no, not – you know. I can't explain it.
Q:     Okay. Can you write?
A:     My name.
Q:     Do you ever write a letter?
A:     No, Gladys does that for me, because I can't spell the words.
Q:     Okay. Can you do addition, subtraction, multiplication, division?
A:     I can't – no, I can't do division and multiplication.
Q:     But you can add and subtract?
A:     Some. I call Gladys.

(Tr. 212).

Hebert also attaches to her brief filed in this court, for the first time, a 4-page psychological evaluation in which the examiner, Dr. Jerry L. Whiteman, a psychologist, reports that Hebert suffers from mild mental retardation (full scale IQ score of 67). Hebert contends that her mental retardation, when combined with her other physical limitations, entitles her to benefits under Listing 12.05(C)[6] of the listed impairments.

It is well-settled that the "claimant has the burden of proving his disability and the ALJ has a duty to fully develop the facts, or else the decision is not supported by substantial evidence." Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995) (holding that, where claimant did not raise issue of mental impairment until his appeal in federal court, claimant could not show that he had placed his mental impairments before the ALJ), citing Pierre v. Sullivan, 884 F.2d

---

[6] Listing 12.05(C), Mental Retardation, states:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 CFR Pt. 404, Subpt. P, App. 1.

11

799, 802 (5th Cir.1989) (per curiam). See also Domingue v. Barnhart 388 F.3d 462, 463 (5th Cir. 2004) (claimant not entitled to benefits for intellectual impairments where claimant did not contend that depression was an impairment at the administrative level and Domingue did not contend that depression was an impairment, and, in the courts, pointed to no evidence indicating that her alleged depression affected her ability to work). An ALJ's duty to investigate, though, does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record. Leggett, 67 F.3d at 566, citing Pierre, 884 F.2d at 802-03 ("isolated comments" about claimants intellectual functioning, viewed within whole record, were insufficient to raise suspicion of mental retardation).

With respect to newly-submitted evidence, the Fifth Circuit has held that evidence submitted for the first time to the Appeals Council is part of the record on appeal, and that district courts should consider and address such evidence when it reviews a case on appeal. See, e.g., Higginbotham v. Barnhart, 405 F.3d 332, 337-38 (5th Cir. 2005). By contrast, a district court may consider evidence presented to it for the first time only when the evidence is new and material and good cause is shown for not presenting it in an earlier proceeding. Rodriguez v. Barnhart, 252 F.Supp.2d 329, 336 (N.D.Tex. 2003), citing 42 U.S.C. §405(g).

In the instant case, Hebert did not apply for benefits on the basis of an intellectual impairment, nor did she place her alleged intellectual impairments before the ALJ for review. Furthermore, the undersigned concludes that Hebert's responses to the ALJ's questions at her administrative hearing are simply too isolated – when viewed in light of the entire record – to have raised a suspicion of mental retardation. Moreover, Dr. Whiteman's report, submitted for the first time in this court on appeal, cannot be considered by the court as evidence supporting

Hebert's claim for benefits, inasmuch as it was not presented in an earlier proceeding, and Hebert has failed to establish good cause for her failure to present the evidence before this appeal.

Without Dr. Whiteman's report, the undersigned concludes that the record does not contain other evidence of a disabling intellectual impairment. In fact, the record contains no evidence that Hebert ever contended – prior to this appeal – that mental retardation was a basis for her inability to work. Considering the foregoing, the ALJ's failure to award benefits on the basis of an intellectual impairment is supported by substantial evidence, and this claim is without merit.

### *Conclusion*

Considering the foregoing, it is recommended that the ALJ's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) days from receipt of this Report and Recommendation to file specific, written objections with the Clerk of Court. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See Richard v. Sullivan, 955 F.2d 354 (5th Cir. 1992) and Shalala v. Schaefer, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal**

conclusions accepted by the District Court, except upon grounds of plain error. See

**Douglass v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on November 23, 2005

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 11-23-05
BY OB
TO mem
TLM / PJ